All right. This is Appeal No. 21-2638, United States of America v. James Rogers, and it's Mr. Stuwan. Good morning, Mr. Stuwan. Good morning, Your Honor. You may begin at any time that you are ready. Thank you, Judge. May it please the Court, Counsel, my name is Mark Stuwan, appointed Counsel for Defendant Appellant James Rogers with me at the Counsel table, but not arguing is my colleague on the brief, Jordan Oliver. The first and primary issue in terms of Count 1 in this appeal is that this Court should vacate Mr. Rogers' conviction on Count 1, a count of felon in possession of a Mossberg shotgun. Mr. Rogers was convicted after trial of two counts, one, a count of possessing a shotgun after being convicted of felony. The other, a charge of possessing a Sig Sauer rifle, also after having been convicted of a felony. More specifically, Count 1 of the indictment alleged that on July 12, 2019, in the Southern District of Indiana, Mr. Rogers possessed, quote, one Mossberg shotgun, close quote. We submit that it is clear that when the grand jury handed up or handed down, depending on your jurisdiction, that indictment on that count, it believed, because apparently the indictment said so, that there was one shotgun, not two. The government's opening, for example, says and encourages the jury to direct its attention to July 12, 2019, quote, at a rural king in Bedford, Indiana, close quote. And it's clear from the government's opening and part of its evidence until the cross-examination brought out the fact that there were two shotguns in this case, and its acknowledgment in its brief that it realized for the first time, discovered it the first time, that it was dealing with two shotguns, that it's clear the only theory the government could have presented to the grand jury, and thus the heart and soul, if you will, of Count 1, was the allegation that Mr. Rogers possessed one actually and solely possessed at the rural king in Bedford, Indiana. But as we know, the government realized or discovered, if you will, at trial, that there were in fact two shotguns. We refer to them, one as the unpurchased shotgun and one as the purchased shotgun, because the evidence was that Mr. Rogers handled a shotgun, a Mossberg shotgun, at the rural king, gave it back to the clerk, it went into the counter, and the gun that was, the shotgun that was purchased and ultimately found at the apartment in Bloomington, Indiana, a different city than Bedford, Indiana, was a different shotgun. So the purchase... Mr. Stewart, forgive me. Given that the indictment didn't specify a particular Mossberg, why was there a constructive amendment problem here? The indictment specified the possession of one Mossberg. Once it became clear at trial that there were two Mossbergs, the judge then required the government to pick one, go with that one. Why was this any different, do you think, from a case in which the indictment just charges possession of a firearm, period? It is different because the charge was one Mossberg shotgun, and the government in part, for example, points to other language in dismissed counts in the indictment as indicating that this new theory at trial of joint possession of the purchased shotgun, which is a different shotgun, we're talking about two different guns, was part of, was contemplated by the grand jury. And that's simply not the case because Overt Act I and Overt Act II of the conspiracy charge that was dismissed specifically referred to Bedford, Indiana, not Bloomington, Indiana, where the shotgun was found. So it's clear that the grand jury indicted Mr. Rogers based on the video evidence that government thought was very compelling, because they thought they only had one gun, of the rural king in Bedford, Indiana, the shotgun he actually possessed. And when it realized there was a second one, and the second one was a different one, different date, different location, the district court's effort, while commendable, to try to cure the problem by directing the jury to exhibit two, the shotgun, in the courtroom when it considered, nevertheless, the verdict form just referred to a firearm, and therefore we don't know whether there was a unanimous jury. If Mr. Stewart, if you acknowledge, and I think you do in the briefs, that possession of a firearm is a continuing offense, can you tell us why it was improper for the district court to look to the dismissed counts, where you were just referencing Overt Act I or Overt Act II, the jury had to decide about the government's theory that Mr. Rogers was a straw purchaser, or was using a straw purchaser, his friend as a straw purchaser. And so that meant, by using his friend as a straw purchaser in New Bedford, beginning in New Bedford with the purchase of the gun, and then continuing in that offense of having her purchase the gun for his possession, that's the meaning of using a straw purchaser, you're using someone else to get the gun when you are really possessing it. So what was improper in your view about the district court looking to the foundations of the grand jury's assessment of the straw purchase theory to understand about the Mossberg shotgun? I apologize to the extent that my comments or the briefs suggested that there was anything improper in the district court doing that. That's not the case. We don't intend to submit that the district court did anything improper by looking at the dismissed counts. Our submission is that it drew the wrong conclusion, that after looking at that language, it agreed with the government that clearly that language supports the notion that the grand jury charged him with jointly possessing the purchased shotgun that was found in Bloomington, when in fact I submit that that language in those dismissed counts and the government's argument now that essentially we can switch out the guns whenever we want because count one, formerly count four, says one Mossberg shotgun, so conflates and discombobulates the information. I think I need you to close the loop. How is that the wrong conclusion? What do you see as the proper conclusion to draw from what the grand jury did with dismissed counts one through three? I respectfully submit that the appropriate conclusion for the district court in looking at that language and the language in one of the counts that went to trial was there was one gun, one shotgun to the government's knowledge when it presented the case to the grand jury, and that was the shotgun in the video at Rural King in Bedford. But in fact it proved at trial the purchased shotgun found in Bloomington, which was not the same shotgun. Again, I don't suggest it's improper. I just think it doesn't support the argument for which the government proposed it and the court agreed. I just respectfully disagree with that. I'd like to ask that same question maybe in a little bit of a different way to see where we go because of course I understand your concern about the prospect that the jury might not have been unanimous as to which Mossberg, Mr. Rogers possessed. But wasn't that taken care of once Judge Magnus Stinson told the government, look, pick one of the Mossbergs, which they did, and then she instructed the jury that possession of that, that very particular Mossberg was the basis for Mr. Rogers' prospective liability on count one. Okay, and to the extent that question is along similar lines as previous ones, I'll try to give a similar answer, and that is it's twofold. One is, as indicated, the government's theory up until it realized there were two shotguns was there was a single shotgun. And I agree the judge made an effort to clarify for the jury that the shotgun they should be concerned about, if you will, was exhibit two. But even after doing that, the verdict form doesn't reference exhibit two. So there's a chance one or more jurors say, well, the verdict says, do we think he's guilty of possessing a firearm? It doesn't say guilty of possessing exhibit two. But the fundamental problem was for whatever reason, either misunderstanding or refusal to come to grips with that, it didn't understand its own case when it started the trial or presented it to the grand jury is the government's own argument in closing where it said, for example, they argued that Mr. Rogers was guilty whether the jury looked at the evidence through the lens of joint possession or sole possession. And I want to iterate one other aspect, and that is, while it's easy to think in terms of purchased versus unpurchased shotgun, there's a fundamental aspect that goes with both of those, and that is the difference in the form of possession. Yes, I get it. There's different forms of possession. Sole. Did you object to the statements of the government in its closing argument? Defense counsel did not object to my knowledge to closing. The other thing I was going to is he told the jury, he argued to the jury that Mr. Rogers is guilty whether the jury looked at it through direct or indirect possession, and then continued its argument, and your Honor, this is my effort to come back around, if you will, to your question in terms of while the district court gave that instruction, the government basically wiped it out with all due respect to the district court when it argued to the jury that Rogers possessed it, both through holding it directly and through jointly and through joint possession. In the government's mind, still at the time of closing argument, it had one shotgun, it. And in its argument to the jury, Mr. Rogers solely possessed it at the Bedford Rural King and jointly possessed it when it was in the apartment in Bloomington. I do see, Mr. Stewart, your point that the government muddied the waters a bit during closing argument. What do you do with our standard that jurors are presumed to follow their instructions? Respect it and honor it. I'm not trying to suggest that the jurors didn't follow the instruction. What I am suggesting is that when the government argues, and your Honor's question is on point, when the government argues something that's different than what the judge is trying to convey, to try to correct a problem created by the evidence the government presented as opposed to the charge it asked the grand jury to return, there's a risk of confusion. I didn't mean to suggest they didn't follow the instructions. But there's a chance. We're all human. Jurors are humans. One of them said, yeah, I know Exhibit 2, but the government said he possessed it at the store and at home. If I might, in wrapping up, in terms of the sentencing issue with the court's indulgence, our argument is set out in the brief, but in an effort to recap it briefly, and that is that in this instance, with the determination that the Sig Sauer rifle, under the guidelines, had the capability of accepting a large capacity magazine, the offense level started at 20. As we pointed out in our brief, while the guidelines talk in terms of accepting a large capacity magazine, that the comments and application notes in a couple of places in the sentencing guidelines indicate that it is in reference to the time of the offense and the fire must have the magazine attached to it or in close proximity to it, and there was absolutely no evidence that there was a large capacity magazine attached to or in close proximity to the Sig Sauer rifle at any time when Mr. Rogers possessed it. Before you flee, Mr. Stewon, did the duplicity issue come up at the first trial? I'm sorry? The duplicity issue. Did that come up at the first trial? I'm just curious. I apologize again. I'm sorry. The duplicity issue that you're raising. Yes, it was raised kind of in combination with the constructive amendment part, yes. Okay. In part, that's why the government contends that it was waived and we submitted it because it wasn't brought up before trial in our brief points out. It couldn't have been brought up before trial, the duplicity argument, because there was no defect in the indictment that was clear on the face of the indictment. It wasn't until the prosecution realized they had two guns that it became obvious and then was raised, but it was raised at trial. Thank you. Thank you. Mr. Stewon, do not flee too far because you are going to, I am going to give you your rebuttal time. Okay. I said, don't flee too far. Okay. All right. Hello, Mr. Cambly. How are you? Good, Your Honor. Thank you. May it please the court. My name is Abhishek Cambly. I'm arguing on behalf of Appelli United States. The first thing I want to clear up is that this idea that the joint possession theory was something that we thought of for the first time in the middle of trial, that simply was not the case. It was a through line throughout the whole process, including grand jury. We had specifically referenced it in our opening when we talked about how they left the store together, and we had tendered an instruction for joint possession before the trial, before the discovery was made that there was more than one firearm at issue in this case. And this was discussed during the oral argument regarding the defendant's oral motion, regarding the constructive possession. The judge concluded that the grand jury could not have returned the indictment that it did, were it not for the fact that joint possession was presented. So the first analysis at that point then becomes... May I just take you back? Because Mr. Rogers seems to suggest in his reply brief that it would not have been clear from the government's closing argument, whether it was relying on Mr. Rogers' sole possession of the Mossberg or joint possession with AW. So would you kindly address that point? Yes, Your Honor. And just to clarify, the first part, that was the end of our closing argument where we were doing a summation. When we referred to sole possession, that was the sixth Sauer firearm, which there was clear sole possession of. So when we reference sole possession, it's regarding the sixth Sauer. And when we reference joint possession, it's regarding the Mossberg. Perhaps I could have stated it more artfully than the words have come out, but that was what was there. And in addition, when we were going over the elements of the offense for count one, we specifically stated possession of a firearm, specifically exhibit two. And when we went over the argument, we especially were describing the Mossberg in the context of the joint possession. And then on rebuttal, we came back and specified that exhibit two was not the firearm that he was holding. Why didn't the government discover the two shotgun issue sooner? It seems apparent from, if you're reading the transcripts, from the Rural King video. Yes, Your Honor, it was an error from our end. Basically, that happened in the middle of the security footage. Prior to when we had the case originally, the Rural King witnesses had told the agent that it was the same firearm, and we hadn't been looking at the middle parts of the video footage clearly, and that's how we ended up with the error. And it obviously was an error that we could have fixed, but unfortunately, we made a mistake and we didn't end up catching it until trial. Until the second trial. Yeah, until the second trial, yes, Your Honor. And unfortunately, it happened, so then the issue becomes what the law says we have to do about it. And from our perspective, what this ended up being was a harmless variance rather than a constructive amendment issue. Ultimately, what he was convicted of was what was in the indictment, which was one Mossberg shotgun. To the extent that it's not a variance and could give rise to a constructive amendment, then the question becomes how does the court handle it? Does it handle it like Pearson and Lightenum where it says one firearm or a firearm, excuse me, or is it like Holderson where the court orders the jury to focus in on a specific firearm? And this case was handled like Holderson. The judge made us select which firearm and which theory we were going to present to the jury. And we went with that theory. I want to also address the verdict form issue. Can you? No, no, before you do that, forgive me, but do you think that it matters that the grand jury didn't know there were two Mossberg guns? And so we don't know whether it would have charged Mr. Rogers with possessing one or both. Does that matter at all? Your Honor, ultimately, we went into grand jury with the belief that it was one Mossberg shotgun. And both theories as to how he possessed one Mossberg shotgun was ultimately presented. So the fact that he held a Mossberg shotgun was presented. And then the fact that he was jointly possessing it at the Rural King in Bedford, Indiana, through the straw purchase was also presented. So the issue is, you know, if the evidence presented to the grand jury ultimately supports the language that was in the indictment, that's what we believe is the pertinent issue in this case. Now I want to talk a little bit about the verdict form. The palant leaves out, it focuses on the language in the verdict form that states it was a firearm, but leaves out the second part, which states as contained in the indictment. So the indictment contains obviously the one Mossberg shotgun. And then the judge went back and instructed them on which particular Mossberg shotgun that they should focus on. And contrary to appellant's argument, we did specify in the beginning of our close and our rebuttal, which firearm that was. And as Your Honor noted, jurors are presumed to follow the instructions of the judge, which we have no reason to believe that they did not in this case. Now I want to tackle the duplicity argument a little bit, since even though a lot of the same arguments meld in, it's a little bit of a different issue. We do believe that the duplicity argument was waived in this instance because the defendant was the one who got it out of the rural King witness, Mark King, that it was two separate shotguns. So at that point, if it's not raised prior to trial, that issue is considered waived to the extent that it's not waived. It's not duplicitous for the reasons that the judge stated, or excuse me, for the reason that we stated earlier today. And then ultimately the judge instructed them on which firearm to draw their attention to. And the defense had an opportunity in that case to object to the instruction, but they did not. And if you look at United States v. Sheriff, it was a duplicity case, a case in where duplicity was an issue, but the defendant had a problem with the specific instruction that was given and that court stated that it was waived as a result. Now that standard doesn't apply to constructive amendment, but does apply to duplicity. So we just wanted to clarify that since the appellant's reply highlighted that issue. And in regards to the sentencing argument, we saw in the appellant's- Well, before you move on to sentencing, what's the government's position about Mr. Rogers' double jeopardy argument? Do you concede that the government is barred from seeking a new indictment based on his possession of the display shotgun on July 12th? We do concede that, Your Honor, that he cannot be tried for that. We have presented those theories to the grand jury, and when we went into trial, those theories were presented, so we are barred from presenting that to another grand jury and charging him with that in the future. And in addition, the issue with double jeopardy is if there are two different firearms at play, the idea behind it is that they might convict him of one that was not originally charged if they're confused as to which one it was. But in this case, that's not an issue since the judge directed them as to which one to charge him again, and so we don't believe double jeopardy is an issue in this case. The sentencing case, the reply brief from the appellant raises that the standard is preponderance of the evidence. While that's true at the time of sentencing, when we get to the appellate process, that's not the standard. The standard is clear error, and we don't think that this comes close to clear error. So the first part was whether there was a high-capacity magazine involved at all in this case. It's clear from the PSR that there was evidence that the gun was purchased with the high-capacity magazine. And what is that evidence? The evidence was a statement relayed by the agent to the probation officer that the firearm was purchased with the 30-round magazine. That's all? Yes, Your Honor. And the judge considered that evidence, and the defendant actually conceded that at the sentencing. So basically, when the judge was trying to clarify what exactly his objection was, he stated that the issue was at the time that Rodgers had solely possessed the firearm, there wasn't a high-capacity magazine attached, and only because someone comes later on and purchases it, that he shouldn't face that liability. So the issue then becomes, is it clear error for a judge to accept what's in the PSR that both parties concede at the time of sentencing did happen? And we don't, we contend that it's not in that instance. Nobody bothered to go get a receipt from the store? Your Honor. The store record. Nobody bothered to do anything like that? We did have the receipt, and we didn't understand it based on the original objection that was written, what the specific objection. So you had the receipt, but you never introduced it? That's correct, Your Honor. But in this instance, we didn't understand exactly the subject of the defendant's objection until we got to the sentencing hearing, and then our understanding was that it was conceded at that time that the firearm wasn't. And the sentence was enhanced by how much? By six levels. Six levels. Yes, Your Honor. Six levels because the case agent told the government's lawyer, and the government's Yes, Your Honor. It was in the PSR, and it was evidence that the court had considered in making its decision, and it was conceded by Rogers at the time of sentencing as well. Mr. Conley, I understood your position to be that the case agent told the probation officer writing the PSR. Yes. Yeah, we had passed along that message to the probation officer. Oh, and he did not tell it to the probation officer directly? No, we had forwarded an email, and then that's how, and the probation officer wrote verbatim what we had forwarded from the agent. The information is clearly hearsay, but I take it your argument is that hearsay is perfectly appropriate for consideration at sentencing. Yes, Your Honor. Hearsay is the rules that the general rules of evidence don't apply, and hearsay is appropriate. The subject of the objection at the district court level was not that there was no high capacity magazine involved at all, so we were addressing a different objection than what's being raised on appeal. Our understanding at the time was that that was conceded, so the focus of our argument was the issue of whether he actually had possession of it at the time that the high capacity magazine was not there at the time that he solely possessed it, but it was clear that it was there at the time that he jointly possessed it, which was when it was purchased. And in addition, we also had evidence in the motion in the Lemonade hearing where Officer Weisheit had testified that he had personally possessed the firearm after the purchase because he had interviewed A.W., who stated that she had told Rogers to get rid of the firearm, and he was the one who directed the officer as to where it was located. That's all the argument that I have, unless the court has any further questions. Anyone? No? Thank you. Then you really may flee. All right. Mr. Stewart. OK. Mr. Stewart. Hello. Thank you, Your Honor. Like a bad penny, I return an eye. No, no, no. I was indulgent. I am struck, although I would commend the government for its acknowledgement that it made a mistake not knowing that there were two guns by failing to look at its own evidence. It was an error on our end. The fact that there was one shotgun, we made a mistake. That's commendable. The problem is James Rogers, the defendant, is the one that feels that pinch, the one that's feeling the pain of the government's mistake. He's the one that was convicted of a charge that the government constructively amended. And when asked if it matters whether the grand jury knew that there was one or two shotguns, the government didn't answer that question, but instead submitted and acknowledged, officer of the court, that ultimately both theories were presented to the grand jury. The district court didn't know that. Why not present that to the district court? We may not be here on this issue if some of this evidence that the government now has, like evidence from a motion in limine hearing that's not even mentioned in its brief or mentioned at argument. So joint possession was never argued by the defense as a new idea to the government. I don't know that it was a new idea to the prosecution, but it was clearly a new idea to the grand jury. There is without question, and I think the government has acknowledged again yet this morning, that it made a mistake in not knowing there were two guns. It could not have asked. It's physically, logically impossible. It could not have asked the grand jury to have indicted them on the Mossberg shotgun based on some theory of joint possession of the purchase shotgun that ultimately was introduced at trial. As to the sentencing issue, it is- Forgive me for a moment. Wouldn't it have been hostile for there to have been joint possession in Bedford when they walked out of the store? I believe the courts suggest part of the reason we think it's a problem with constructive amendment or a fatal variance, and that is there's more than one or two theories here. There's three or four. Sole possession of the unpurchased shotgun, arguably constructive. Joint possession of the unpurchased shotgun. Joint possession of the purchased shotgun at the Rural King in Bedford. Joint possession of the purchased shotgun at the apartment in Bloomington. When you've got multiple theories like this, and it doesn't have to do with just which shotgun you're talking about, but the form of possession, we should, as a matter of justice, make darn sure that the grand jury indicts the case on a clear theory and that the government, having presented that case to the grand jury, then proves the case consistent with that theory. How do you- I just heard you say it's either a constructive amendment or a fatal variance. How do you get to fatal when the standard review for a variance is harmless error, which takes us back to looking at the trial and seeing what the effect of the instruction was and what the precise language of the indictment was? It is our submission that when looking at the language in the indictment, considering the evidence, the instructions, and the verdict form, that it was an error and it was not harmless error in this instance. Briefly, in terms of the sending issue, the court asked that the offense level with the gun be 70 to 87 months. Without that large capacity magazine enhancement, it's offense level 14. In a criminal history category 6, the range was and should have been 37 to 46 months. And it's not whether the gun can accept a magazine. The guidelines make clear when it says to be capable of accepting a large capacity magazine for purposes of this guideline, at the time of the offense the firearm must have a magazine attached to it or one must be in close proximity to it. Not one iota of evidence at trial or at the sentencing here. The government, and we acknowledge, the preponderance of evidence is the burden of proof at a sentencing. But what the government argues and maintains wasn't preponderance of the evidence. It wasn't a reasonable inference. It was pure speculation. Thank you. And we ask that the court reverse Mr. Rogers' conviction on count one, vacate his sentence on count two, and remand for resentencing. Thank you for your patience and indulgence. And we thank you, Mr. Stewart, and your law firm for the really fine job that you have done for Mr. Rogers. Thank you so very much. And thank you as well, of course, to Mr. Tampley and the government for the fine job that the government always does, or most always does. And we are going to take a 10-minute break now. This case, of course, will be taken under advisement. And we thank you.